IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

STAN SPRINGEL                      :            CIVIL ACTION
                                      :
      v.                         :           No. 08-146
                                        :
DAWN PROSSER                   :

**MEMORANDUM**

**Juan R. Sánchez, J.**                                        June 12, 2012

      In this turnover action, Stan Springel, the Chapter 11 trustee for the bankruptcy estates of

Innovative Communication Corporation (ICC), Emerging Communications, Inc. (ECI), and

Innovation Communication Company, LLC (New ICC) (together, the "ICC Debtors"), sought to

restore to the estates allegedly fraudulent pre-petition transfers and allegedly unauthorized post-

petition transfers made from the ICC Debtors to Defendant Dawn Prosser.[1]  Following trial, the jury

returned a verdict in favor of Prosser and against Trustee Springel.[2]  Upon entry of the jury verdict,

Springel moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 with

respect to Count 6 of the Complaint regarding unauthorized post-petition transfers pursuant to §

549(a) of the Bankruptcy Code.  Springel also moved for a new trial under Federal Rule of Civil

Procedure 59(a) on Counts 1, 2, and 5 of the Complaint regarding his claims based on actual and

---

[1] The transfers at issue in this case involved a mix of funds, services and/or property of one or more
of the ICC Debtors.

[2] By agreement of all parties, this case was tried contemporaneously with the turnover action in the
parallel Chapter 7 case, *James P. Carroll v. Dawn Prosser*, No. 08-147 (D.V.I.) using two separate
juries.  The Chapter 7 case was the personal bankruptcy of Jeffrey Prosser.  Although the two juries
heard the overlapping evidence in the two cases at the same time as each other, each jury heard a
separate opening and closing, each jury was charged independently of the other, and each jury
deliberated separately.

constructive fraud pursuant to 11 U.S.C. §§ 544(b), 548(a), and 550 of the Bankruptcy Code and the applicable Virgin Islands law.

In his motion for judgment as a matter of law, Springel argues the evidence was undisputed at trial that Prosser received post-petition transfers that were not authorized by the Bankruptcy Court or the Bankruptcy Code and therefore judgment should be in his favor on this Count.

Federal Rule of Civil Procedure 50 permits a court to grant judgment as a matter of law "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Price v. Trans Union, L.L.C.*, No. 09-1332, 2012 WL 898687, at *2 (E.D. Pa. Mar. 16, 2012) (quoting *LePage's Inc. v. 3M*, 324 F.3d 141, 145-46 (3d Cir. 2003)). In determining whether to grant this "sparingly invoked remedy," the court must "refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (internal citations and quotation marks omitted); *see also LePage's Inc.*, 324 F.3d at 145-46 ("[R]eview of the jury's verdict is limited to determining whether some evidence in the record supports the jury's verdict.").

Count 6 of Trustee Springel's Complaint seeks to recover unauthorized post-petition transfers from the ICC Debtors to Prosser pursuant to § 549(a) of the Bankruptcy Code. Section 549 permits a trustee to avoid transfers of property belonging to the estate that occur after the bankruptcy case was filed, and are not authorized by the Bankruptcy Code or Bankruptcy Court. 11 U.S.C. § 549(a); *see also In re Pa. Gear Corp.*, Bankr. No. 02-36436, Adv. Nos. 03-940, 03-942, 2008 WL 2370169, at *6 (Bankr. E.D. Pa. Apr. 22, 2008). The purpose of this provision is to allow a trustee to avoid those transfers which deplete the estate. *In re Pa. Gear Corp.*, 2008 WL 2370169, at *6; *In re PSA,*

2

*Inc.*, 335 B.R. 580, 584 (Bankr. D. Del. 2005). Once a trustee has established a post-petition transfer was unauthorized, the burden then shifts to the recipient to show the validity of the transfer or assert an affirmative defense, such as the defense that the transfers occurred in the ordinary course of business or that the recipient provided new value to the debtor post-petition. *In re Pa. Gear Corp.*, 2008 WL 2370169, at *6-7; *see also In re Johnson Bros. Truckers Inc.*, 9 F. App'x 156, 165 (4th Cir. 2001); *In re Kickel*, 357 B.R. 490, 496-97 (Bankr. N.D. Ill. 2006); *In re Bryant*, 103 B.R. 95 (Bankr. E.D. Pa. 1989). Here, Chapter 11 involuntary bankruptcy petitions were filed for ICC and ECI on February 10, 2006, and New ICC on July 5, 2007. Springel argues any transfers made after those dates that were not authorized by the Court or the Code are subject to avoidance as a matter of law. He further argues because evidence at trial was undisputed that transfers from the ICC Debtors to Prosser after the relevant dates were not authorized, the jury's verdict on this issue cannot stand. *See* Verdict Form, Nos. 21-23.[3]

Prosser contends the jury determined the transfers were not fraudulent and were for fair value, therefore, "it did not matter to the jury, ***nor does it matter as a matter of law***" whether the transfers were made pre- or post-petition. Resp. 3 (emphasis in original); *see also* Verdict Form, Nos. 1-2, 7-8 (noting the Verdict Form failed to distinguish between pre-petition and post-petition transfers). Prosser further argues because the jury found she provided value for the transfers

---

[3] The jury returned a verdict finding Prosser received and/or was the beneficiary of "certain transfers of funds, services and/or property from the ICC Debtors." *See* Verdict Form, No. 1. They also found by clear and convincing evidence that none of the ICC Debtors made the transfers to Prosser "with actual intent to hinder, delay or defraud any other existing or future creditor." *See* Verdict Form, No. 2. They jury found Prosser provided services or value to the ICC Debtors, *see* Verdict Form, No. 7, and that the transfers to Prosser were in exchange for "reasonably equivalent value." *See* Verdict Form, No. 8. However, the jury also found Prosser was not the recipient or beneficiary of "certain transfers of property of one or more of the ICC Debtors after the respective petition dates of the ICC Debtors." *See* Verdict Form, No. 21.

occurring between July 5, 2007, and October 3, 2007, the date on which Trustee Springel was appointed,[4] *see* Verdict Form, Nos. 7-8, the transfers during this "gap" period were not fraudulent under 11 U.S.C. § 549(b), which permits post-petition transfers during the gap period for which new value was provided in exchange. This Court disagrees.

To prevail on a claim under § 549 of the Bankruptcy Code, a trustee need only show that after the commencement of the case at issue, property of the estate was transferred, and the transfer was not approved by the Bankruptcy Court or any provision of the Code. 11 U.S.C. § 549(a); *In re PSA, Inc.*, 335 B.R. at 584-85. Where those facts are undisputed, judgment must be in favor of the party asserting the § 549 claim. At trial, Trustee Springel proved these elements, a fact which Prosser has never disputed. Contrary to Prosser's assertion, whether or not the transfers were fraudulent is not an element of a § 549 claim as a matter of law. *In re PSA, Inc.*, 335 B.R. at 584 (stating fraud by the debtor is irrelevant to the application of § 549) (quoting 5 *Collier on Bankruptcy* ¶ 549.02 (15th ed. rev. 2005)).

Trustee Springel presented testimony regarding the transfers from Ingrid Christian, a director at Alvarez & Marsal, LLC, and Dennis Kanai, the Chief Financial Officer of ICC. Springel also elicited testimony from Prosser herself. The testimony of these witnesses, together with relevant documentary evidence, which was undisputed both at trial and remained so in Prosser's post-trial response, established Prosser received transfers from the ICC Debtors after the commencement of the bankruptcy case against them, which were not authorized by the Bankruptcy Court or the Code. *See* Trial Tr. 282:22-284:11, 286:4-298:23, 301:10-15, June 7, 2011 (Ingrid Christian); Trial Tr. 245:2 - 247:10, 247:17-24, 249:17 - 250:22, June 7, 2011 (Dawn Prosser); Trial Tr. 22:23 - 23:2,

---

[4] This time period is referred to as the "gap" period under the Code.

4

June 8, 2011 (Dennis Kanai); Exs. 7 and 45 (showing schedule listing non-business payments made by the ICC Debtors to Prosser or her family beginning July 6, 2007, the day after the last involuntary bankruptcy petition was filed against the ICC Debtors, through the end of September 2007, just prior to Trustee Springel's appointment). Significantly, Prosser did not refute receiving the transfers made to her after July 5, 2007, or that the post-petition transfers had not been approved by the Bankruptcy Court or the Code. Trial Tr. 245:2 - 247:24, June 7, 2011 (Dawn Prosser) (testifying she had no knowledge whether any transfers to her were approved by the New ICC Board of Directors and had never seen a court order approving any transfer made to her after the ICC Debtors were in bankruptcy); *see also* Trial Tr. 167:2-12, June 7, 2011 (Alan Barbree).

Moreover, although Prosser now argues the transfers were valid because she provided new value to the debtors for the transfers pursuant to § 549(b), she never attempted to assert or prove this defense specifically in any of her pleadings or at trial. As a result, not only was the jury never instructed on this "new value" defense, but that defense is now waived. *See* Fed. R. Bankr. P. 6001 ("Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof."); *In re Discovery Zone, Inc.*, 300 B.R. 856, 859 (Bankr. D. Del. 2003) (stating the burden of establishing the existence and amount of new value is on the recipient of the transfer). *Compare Regal Indus., Inc. v. Genal Strap, Inc.*, No. 93-0209, 1994 WL 388686, at *3 (E.D. Pa. 1994) (finding affirmative defense was waived where the defense was not raised until after trial in defendant's response to the plaintiff's post-trial motion to amend judgment, citing *Simon v. United States*, 891 F.2d 1154 (5th Cir. 1990) (same)), *with Franklin Life Ins. Co. v. Bieniek*, 312 F.2d 365, 371-72 (3d Cir. 1962) (finding affirmative defense had not been waived, even though it was not pleaded, where the defense was raised in defendants' answer and pre-trial statement), *and Woodson*

*v. Scott Paper Co.*, 109 F.3d 913, 925 n.9 (E.D. Pa. 1997) (stating a defendant does not waive an affirmative defense if it was raised "at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond" (quoting *Charpentier v. Godsil*, 937 F.2d 859, 863-64 (3d Cir. 1991) (internal quotations omitted))).

Even had the new value defense been asserted "at a pragmatically sufficient time," Prosser did not establish such defense at trial. Pursuant to this defense, a transfer is not avoidable to the extent the creditor can establish that the transfer was followed by an advance of new value to the debtor on an unsecured basis. *In re Lease-A-Fleet, Inc.*, 155 B.R. 666, 684 (Bankr. E.D. Pa. 1993). The amount of new value must be proved with specificity. *In re Discovery Zone, Inc.*, 300 B.R. at 859. At trial, Prosser did not present any evidence showing she provided new value to the ICC Debtors specifically in exchange for the transfers that occurred after the petition date. Indeed, in her post-trial response, Prosser fails to cite to any evidence she presented at trial specifically in support of such a defense, instead relying on the jury's finding that Prosser provided value to the ICC Debtors. *See* Verdict Form, No. 7. Significantly, however, the jury specifically found that Prosser did not receive or was not the beneficiary of post-petition transfers. *See* Verdict Form, No. 21. Consequently, Prosser could not have provided value for transfers which the jury found she never received.

Furthermore, the jury instructions regarding Trustee Springel's § 549 claim, which were agreed upon by all parties in this case, did not include an instruction for Prosser's § 549(b) new value defense. With respect to the § 549 post-petition transfer claim, this Court instructed the jury only that:

> [i]n order to for Trustee Springel to recover from Dawn Prosser on Trustee Springel's post-petition transfer claims based on Section 549 of the Bankruptcy Code, you must

> find Trustee Springel has proved the following three elements by a preponderance of the evidence . . . One, Dawn Prosser received or was the beneficiary of certain transfers of property of one or more of the ICC Debtors. Two, such transfers were received after the respective petition dates of the ICC Debtors. And three, such transfers were not approved by the Bankruptcy Court or authorized by the Bankruptcy Code.

Trial Tr. 80-81, June 9, 2011. No instruction was requested or given concerning the exception to post-petition transfers pursuant to § 549(b).

Consequently, Trustee Springel's motion for judgment as a matter of law is granted with respect to Count 6 of the Complaint regarding post-petition transfers pursuant to § 549 of the Bankruptcy Code because Springel proved transfers occurred after the respective petition dates of the ICC Debtors, which were not authorized by the Bankruptcy Court or the Code, and Prosser failed to prove the validity of these transfers. Trustee Springel may therefore recover the unauthorized post-petition transfers from the ICC Debtors made to Prosser in the amount of $213,606.37.

Trustee Springel next argues he is entitled to a new trial under Federal Rule of Civil Procedure 59(a) on Counts 1, 2, and 5 of the Complaint regarding actual and constructive fraud because the jury verdict is against the great weight of evidence.

Rule 59 provides, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Generally, a district court may grant a motion for new trial pursuant to Rule 59 "if it determines that the verdict is inconsistent with substantial justice because the verdict is against the weight of the evidence; the damages are excessive; the trial was unfair; or that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.*, 899 F. Supp. 1385,

1397 (E.D. Pa. 1995) (internal quotation marks and citations omitted). Where, as here, the moving party seeks a new trial on the basis that the verdict is against the weight of the evidence, a new trial is "proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991) (citation omitted). The trial court may consider the credibility of witnesses and weigh the evidence to determine whether a new trial is necessary to prevent a miscarriage of justice. *See Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir. 1988); *see also* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2531 (3d ed. 1998). The court, however, is "not to substitute its own judgment for that of the jury simply because the court might have come to a different conclusion." *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1186 (D.N.J. 1992), *aff'd*, 4 F.3d 1153 (3d Cir.1993) (quotation and citations omitted). Indeed, a court granting a new trial merely because of its disagreement with the verdict effects a denigration of the jury system to the extent the judge usurps the prime function of the jury as the trier of facts. *See id.* (quotation and citations omitted); *see also V.I. Mar. Serv., Inc. v. P.R. Mar. Shipping Auth.*, 978 F. Supp. 637, 647 (D.V. I. 1997) (stating it is for this precise reason that "[w]here the movant seeks a new trial on the basis that the verdict is against the weight of the evidence, the Court's power to overturn the jury's award is severely circumscribed"). Although the decision to grant a new trial is within the discretion of the district court, "such requests are disfavored." *State Farm Mut. Auto. Ins. Co. v. Lincow*, 715 F. Supp. 2d 617, 626 (E.D. Pa. 2010) (internal citations omitted).

At trial, Trustee Springel sought to recover fraudulent transfers made to Prosser from the ICC

Debtors pursuant to § 548(a)(1) of the Bankruptcy Code,[5] which contains both actual fraud and constructive fraud provisions. *In re Nam*, 257 B.R. 749, 768 (Bankr. E.D. Pa. 2000).[6] Trustee Springel asserted Prosser was liable under both provisions. At trial, the Trustee had the burden of proof on these claims. *Id.* at 768 n. 24. Each type of claim will be discussed in turn.

To prove his claims based on constructive fraud, Trustee Springel had to show: (1) each transfer was made without the exchange of reasonably equivalent value (11 U.S.C. § 548(a)(1)(B)(I)) or fair consideration (28 V.I.C. §§ 204-206 (2010)); (2) that one or more of the ICC Debtors (a) was insolvent on the date such transfer was made or became insolvent as a result of the transfer; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the respective ICC Debtor was an unreasonably small capital; or (c) intended to incur or believed it would incur, debts that would be beyond its ability to pay as such debts matured. 11 U.S.C. § 548(a)(1)(B); 11 U.S.C. § 544(b), 28 V.I.C. §§ 204 - 206 (2010).

Trustee Springel asserts he conclusively established Prosser received or was the beneficiary

---

[5] Jeffrey Prosser, Dawn Prosser's husband and a non-party to this action, was an officer and director of New ICC, and the sole member of its ultimate parent company, ICC-LLC. In these capacities, Jeffrey Prosser exercised pervasive control over the ICC Debtors. As a result, his conduct could be imputed to the ICC Debtors. Through his fraudulent transfer claims, Springel sought to avoid transfers that Jeffrey Prosser directed or otherwise caused one or more of the ICC Debtors to make to or for the benefit of his wife. The jury was so instructed. Trial Tr. 76:15-18, June 9, 2011.

[6] Springel also sought to recover fraudulent transfers pursuant to 11 U.S.C. § 544(b), which allows a trustee to utilize state fraudulent transfer laws. Springel asserted such claims pursuant to United States Virgin Islands law. The main distinction between Springel's § 548(a)(1) claims and those brought pursuant to § 544 and the relevant laws of the Virgin Islands, is that under § 544, Springel was also required to establish the existence of one or more creditors who held or hold unsecured claim(s) against the ICC Debtors that are allowable and remain unpaid. *Compare* 11 U.S.C. § 548(a)(1)(A) *and* 11 U.S.C. § 548(a)(1)(B), *with* 11 U.S.C. § 544 *and* 28 V.I.C. §§ 204 - 206 (2010). The jury found Springel established this element at trial. *See* Verdict Form, No. 13 (finding "[at] all relevant times . . . one or more creditors exist who held or hold allowable unsecured claim or claims against the ICC Debtors").

of several transfers made by one or more of the ICC Debtors for which Prosser did not provide any value to the ICC Debtors. Consequently, Springel asserts the jury's finding to the contrary cannot stand, and a new trial should be granted on his constructive fraud claims.[7]

At trial, Ingrid Christian established numerous transfers amounting to between $12.2 million and $31.8 million had been made by the ICC Debtors on behalf of Jeffrey and/or Dawn Prosser. *See* Trial Tr. 296:1 - 297:8, June 7, 2011 (Ingrid Christian); *see also* Trial Exs. 7 (showing non-business payments made by ICC for the benefit of the Prosser family), 45 (breaking down ICC's non-business payments for each year from January 1, 1999, through September 30, 2007, and showing for the two years prior to the date bankruptcy was filed against New ICC, transfers attributed to Jeffrey and/or Dawn Prosser totaled $12.2 million, and, dating back to 1999, transfers attributed to Jeffrey and/or Dawn Prosser totaled $31.8 million). For her part, Prosser admitted to the receipt of numerous transfers from the ICC Debtors at trial. *See* Trial Tr. 200:9-21, 202:8 - 203:17, 215:17 - 216:8, 239:16 - 240:1, 241:3 - 242:13, 245:2 - 247:10, 247:17-24, 249:17 - 250:22, June 7, 2011 (Dawn Prosser).[8]

Although the jury found that Prosser provided value for the transfers from the ICC Debtors, *see* Verdict Form, Nos. 7, 8, and 14 (finding Prosser provided "services or value" to the ICC Debtors, the ICC Debtors did not make transfers to Prosser in exchange for which they did not

---

[7] The jury concluded Prosser provided value to the ICC Debtors; therefore, it did not reach the questions regarding the other elements of the claim, including questions regarding New ICC's insolvency, the fact that New ICC was left with unreasonably small capital, or that it was unable to pay its debts as they became due. Because Trustee Springel asserts the evidence elicited at trial conclusively established Prosser did not provide value to the ICC Debtors in exchange for the transfers, however, Prosser seeks a new trial on these claims.

[8] In addition, in her response to Springel's post-trial motion, Prosser admitted to receiving transfers from the ICC Debtors totaling $31,883,675.01. Resp. 3.

receive "less than a reasonably equivalent value," and the ICC Debtors did not make transfers to Prosser without "fair consideration"), Prosser's own testimony belies this finding. At trial, Prosser made clear that she did not provide any value to the ICC Debtors, let alone "reasonably equivalent value" or "fair consideration." Specifically, Prosser testified only that she brought value to her marriage, *i.e.,* to Jeffrey Prosser. She testified she took care of the household, *see* Trial Tr. 206:20 - 207:9, June 7, 2011 (Dawn Prosser), and that the Shoys Estate, a non-business property constructed for the purpose of being the Prosser residence, has been used for corporate functions, such as dinners, *see* Trial Tr. 241:22 - 242:11, June 7, 2011. However, this type of value—Prosser's value as the wife of Jeffrey Prosser—is value Prosser provided solely to her husband, and not to the ICC Debtors. Indeed, when questioned whether she provided value to one or more of the ICC Debtors in exchange for certain costly embellishments purchased by ICC specifically for the pool area of the non-business related Shoys Estate, Prosser testified she did not, stating more generally she did not provide value to New ICC in exchange for any specific transfer made for her benefit because she "didn't have to provide value," explaining further, "there wasn't any question in my mind that I had to provide value." Trial Tr. 245:2 - 247:10, June 7, 2011; *see also* Trial Tr. 241:22 - 242:13, June 7, 2011 (Dawn Prosser) (agreeing that some expenses for the Shoys Estate, a non-business property intended to be the Prosser residence, were charged to New ICC). The fact remains Prosser was never employed by the ICC Debtors, and never provided any services or value to the ICC Debtors. *See id.*; *see also* Trial Tr. 238:22 - 239:7, June 7, 2011 (Dawn Prosser).

Notwithstanding her own trial testimony, in her response to Springel's post-trial motion, Prosser insists she provided value to the ICC Debtors in exchange for these transfers, citing several examples in the record demonstrating such value. Therefore, Prosser argues the jury's finding

should not be disturbed.  None of these examples, however, demonstrate value provided to the ICC Debtors, whose business was in telecommunications.  Rather, they either show value Prosser provided to her husband, Jeffrey Prosser, or do not show value provided at all.  For example, Prosser notes that the Shoys Estate was purchased and titled solely to her in or around 1989, before New ICC even existed.  Resp. 4.  This example does not demonstrate value to the ICC Debtors, and is not even relevant to the transfers at issue in the case, given that the only transfers at issue are those that occurred beginning in 1999. *See* Trial Ex. 45.  Prosser also cites Jeffrey Prosser's testimony that she owned one-half of ICC.  Resp. 5.  Though highly disputed at trial, the mere fact of ownership nevertheless does not equate to value to the ICC Debtors, lest an owner drain her company's coffers without having to provide anything in exchange.  In addition, Prosser cites Jeffrey Prosser's testimony explaining taxes were paid on all distributions to Jeffrey Prosser from the contra-equity account. *Id.*  Whether taxes were paid, however, is not relevant to whether value was provided to the ICC Debtors in exchange for the distributions in the first place.  Again citing Jeffrey Prosser's testimony, Prosser notes that without her participation, Jeffrey Prosser would never have been able to acquire Guyana Telecom. *Id.*  Although this may be evidence of value, it likely demonstrates value provided to Jeffrey Prosser, and not necessarily value provided to the ICC Debtors.  Moreover, it is unclear in the record when this acquisition occurred.  Jeffrey Prosser testified only that the company had been "purchased years ago," *see* Trial Tr. 137:19-25, June 8, 2011 (Jeffrey Prosser), but it was not established at trial that any value Prosser may have provided in this years-old acquisition was in exchange for the transfers at issue in this case from the ICC Debtors.  As a further example of the value she allegedly provided to the ICC Debtors, Prosser notes her employment with the ICC Prosser Foundation.  Resp. 5.  This example also fails to demonstrate value to the ICC

Debtors because there is no evidence in the record that Prosser's employment with her husband's foundation provided value to the ICC Debtors, as Prosser herself acknowledged she was never employed by the ICC Debtors, and never provided any services to them. Trial Tr. 238:22 - 239:8, 241:22 - 242:13, 245:2 - 247:10, June 7, 2011 (Dawn Prosser). Prosser cites her testimony that she took care of the household and brought things to the marriage apart from herself and her children. Resp. 5. Again, this type of value, while it may be a benefit to Jeffrey Prosser, in no way benefitted the ICC Debtors. Finally, Prosser asserts she was confident her and her husband's debts would be repaid. *Id.* While this may be true, it does not demonstrate value provided to the ICC Debtors in exchange for the transfers at issue in this case. It does tend to show Prosser admittedly owed debts to the ICC Debtors.

The remaining examples cite evidence elicited at trial related to insolvency. Because the jury did not reach these questions in the Verdict Form, the question of the ICC Debtors' solvency need not be addressed here. The overwhelming evidence shows that while Prosser may have provided some value (which was likely for her husband's benefit only), she did not provide value to the ICC Debtors in exchange for all of the transfers at issue in this case. Accordingly, the Court concludes Trustee Springel established the first element of avoidable transfers under the constructive fraud provisions of the Bankruptcy Code sufficient to entitle the Trustee to a new trial on these claims.

The second type of claims brought by Trustee Springel to recover fraudulent transfers were based on actual fraud meaning that Springel bore the burden of proof to show the ICC Debtors made the challenged transfers to Prosser with the "actual intent to hinder, delay, or defraud a creditor." 11 U.S.C. § 548(a)(1)(A) (actual fraud provision); 11 U.S.C. § 544, 28 V.I.C. §§ 204-206 (2010); *In re Valley Bldg. & Constr. Corp.*, 435 B.R. 276, 285 (Bankr. E.D. Pa. 2010) (stating actual fraud

provisions require trustee establishes debtor made payments with actual intent to hinder, delay, or defraud any creditor). Because "individuals are rarely willing to admit intent, actual fraud is rarely proven by direct evidence." *In re Pa. Gear Corp.*, 2008 WL 2370169, at *9. Instead, courts consider various factors, or "badges of fraud," in determining whether fraud has been proven by circumstantial evidence. *In re Am. Rehab & Physical Therapy, Inc.*, Bankr. No. 04-14562, Adv. No. 04-847, 2006 WL 1997431, at *15-16 (Bankr. E.D. Pa. May 18, 2006). While there are numerous badges of fraud, not all need to be shown to prove a claim of actual fraud. *In re Valley Bldg. & Constr. Corp.*, 435 B.R. at 286 (detailing 11 indicia of fraud courts may consider in determining actual intent, not all of which must be proven to support a claim of actual fraud, and noting this list is "non-exhaustive"); *In re Fedders N. Am., Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009) ("The presence or absence of any single badge of fraud is not conclusive." (citation omitted)).

Badges of fraud relevant to a debtor's actual intent include, *inter alia*, whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *In re Valley Bldg. & Constr. Corp.*, 435 B.R. at

14

286; *In re Am. Rehab & Physical Therapy, Inc.*, 2006 WL 1997431, at *15-16 (quoting *In re Pinto Trucking, Inc.*, 93 B.R. 379, 386 (Bankr. E.D. Pa. 1988)).

At trial, the evidence showed numerous badges were present here. The challenged transfers were made to an insider, given Prosser's relationship to Jeffrey Prosser. As previously discussed, Prosser herself testified she did not provide value to the ICC Debtors in exchange for any of the fraudulent transfers. The transfers were not business-related, and were unrelated to compensation to Jeffrey Prosser in that they were not tied to hours worked, services provided, company performance, or the like. *See* Trial Tr. 248:20-249:9, 263:1-4, June 7, 2011 (Dawn Prosser); Trial Tr. 24:16-25:3, June 8, 2011 (Dennis Kanai). At the time of the transfers, litigation was pending against Jeffrey Prosser which resulted in a significant judgment against him and the ICC Debtors. *See* Trial Exs. 30, 191; *see also* Trial Tr. 20:9-22-25, 67:23-68:9, June 7, 2011 (Trustee Carroll). The assets transferred were never disclosed in financial statements filed with the Bankruptcy Court or on the Prossers' joint tax return. *See* Trial Exs. 1, 2, 147-151, 221. In addition, the transfers made to Prosser, not all of which were accounted for, and none of which were for business purposes, were nonetheless recorded internally as assets on New ICC's general ledger (the "contra-equity account"), and New ICC's audited financial statements referred to the contra-equity account as many things, including a "receivable," "advance," or "notes." *See* Trial Exs. 150, 151; *see also* Trial Tr. 168:2-12, June 7, 2011 (Alan Barbree); Trial Tr. 305:17 - 307:5, 310:3 - 311:14, June 7, 2011 (Ingrid Christian).

Prosser did not address any of these badges of fraud in her response, with the exception of insolvency; however, insolvency, by itself, is not an element that must be established in order to prove an actual fraud claim. *In re Valley Bldg. & Constr. Corp.*, 435 B.R. at 286 (explaining while

there are numerous badges of fraud courts may consider in determining actual intent, not all need to be shown to prove a claim of actual fraud); *In re Fedders N. Am., Inc.*, 405 B.R. at 545 ("The presence or absence of any single badge of fraud is not conclusive." (citation omitted)). Nevertheless, at the time of the transfers, Trustee Springel established that New ICC was insolvent, in that its total liabilities exceeded its total assets for the years 1999 - 2005. *See* Trial Exs. 147 - 151; Trial Tr. 173:2-175:6, June 7, 2011 (Alan Barbree); Trial Tr. 14:16 - 17:16, 26:15 - 27:2, June 8, 2011 (Dennis Kanai); *see also* Trial Tr. 72:22-23, June 8, 2011 (instructing the jury that insolvency means "the fair value of the debtor's assets is less than the debtor's liabilities," which instruction was taken from definition agreed upon by the parties, and is consistent with the law on insolvency for fraudulent transfers under Bankruptcy Code); 11 U.S.C. § 101(32)(A) (defining "insolvent" in Bankruptcy Code as a "financial condition such that the sum of the entity's debts is greater than all of the entity's property, at a fair valuation").[9]

Moreover, in addition to the badges of fraud discussed above, other evidence in the record suggests wrongful intent was behind the transfers. *In re Am. Rehab & Physical Therapy, Inc.*, 2006 WL 1997431, at *17. For example, nine days after a $56 million dollar judgment was entered against Jeffrey Prosser, he and his wife executed a marital asset agreement "for the purpose of

---

[9] In her opposition, Prosser argues that Springel's "reference to New ICC's insolvency on a 'balance sheet basis'" in his post-trial motion is "misleading and not reflective of the legal basis for determining solvency." Resp. 6 n.1 (arguing correctly that assets should be measured at fair value, but contending this necessarily incorporates the "going concern" value of the entity which is measured at "market value" rather than "distress value," an issue on which the jury was not instructed). Springel's definition of insolvency, to which Prosser now objects, is consistent with the jury instruction, which was submitted jointly to the Court by the parties and agreed upon by the parties. Significantly, Prosser does not take issue with the jury instruction. Prosser cannot now assert a new definition for the term, or insert new terms into the definition. Nevertheless, because the jury did not reach any questions on the Verdict Form relating to insolvency, and because insolvency is not the only badge of fraud needed to prove actual fraud, Prosser's argument fails.

defining the separately owned property of Dawn E. Prosser" to "define their respective financial and property rights." *See* Trial Ex. 124 (titling all personal property in Dawn Prosser's name on January 18, 2006); *see also* Trial Tr. 209:6 - 212:5, June 7, 2011 (Dawn Prosser). Despite the timing of this agreement, Jeffrey Prosser testified there was really no need for it, explaining its need must have been generated out of his wife's concern about the judgment and its effect on her husband. *See* Trial Tr. 196:10 - 198:24, June 8, 2011 (Jeffrey Prosser). Thereafter, on July 31, 2006, the date Jeffrey Prosser filed for personal bankruptcy, he transferred $480,000 to his wife. *See* Trial Tr. 217:22-25, June 7, 2011 (Dawn Prosser). These actions highlight the state of mind of Jeffrey Prosser whose conduct was imputed to the ICC Debtors as the ultimate principal of the ICC Debtors and an officer and director of New ICC. Trial Tr. 70:2-9, 76:15-18, June 9, 2011 (charging jury on both issues, using instructions agreed upon by all parties); *see also In re Pinto Trucking, Inc.*, 98 B.R. at 386 ("It is the conduct of the transferor, *i.e.*, the debtor, which must be established to have been fraudulent, not the transferee.").

The overwhelming evidence indicates Trustee Springel showed several badges of fraud at trial sufficient to avoid transfers under the actual fraud provisions of the Bankruptcy Code and the applicable Virgin Islands law, only one of which Prosser disputes. For this reason, Trustee Springel is entitled to a new trial on these claims.[10]

---

[10] Because this Court finds that Trustee Springel is entitled to a new trial on Counts 1, 2, and 5 of his Complaint, Springel's argument concerning Attorney Moorhead's conduct at trial need not be addressed.

An appropriate Order follows.

BY THE COURT:

Juan R. Sánchez, J.

RECEIVED
2012 JUN 12  AM 11:32
CLERK OF THE
DISTRICT COURT
ST. THOMAS, V.I.